NOT FOR PUBLICATION                                                                                         (Doc. No. 10)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| JOSEPH LIGUORI and LISA LIGUORI, | |
| Plaintiffs, | Civil No. 14-5898 (RBK/KMW) |
| v. | OPINION |
| CERTAIN UNDERWRITERS AT LLOYDS LONDON SUBSCRIBING TO POLICY #AJD8955, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. (Doc. No. 10.) The subject of this motion is Plaintiffs Joseph ("Joseph") and Lisa ("Lisa") Liguori's (collectively "Plaintiffs") Complaint, in which Plaintiffs assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing. For the reasons stated herein, Defendant's Motion will be denied.

## I.     FACTUAL BACKGROUND[1]

Plaintiffs own a residential property located at 1927 Ocean Avenue, Borough of Seaside Heights, Ocean County, New Jersey. (Compl. ¶ 2.) Plaintiff purchased an insurance policy, Policy No. AJD8955 (the "Policy"), from Certain Underwriters at Lloyds London ("Defendant"),

---

[1] When considering a motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the non-moving party. See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

which covered the property at issue in this matter for the period of August 23, 2012 through August 23, 2013. (Def.'s Statement of Undisputed Material Facts ("SMF") ¶ 1.) The Policy included insurance coverage for damage caused by wind but did not cover damage caused by flooding. (See Policy, attached to Def.'s Br. as Ex. B.) Furthermore, the policy included a statute of limitations that provided that "[n]o action can be brought unless the policy provisions have been compiled with and the action is started within one year after the date of loss." (Id.)

On October 29, 2012, Superstorm Sandy struck the New Jersey coast. (Compl. ¶ 10.) Subsequently, on November 1, 2012, Defendant received notice of loss that occurred as a result of Superstorm Sandy to Plaintiffs' property covered by the Policy. (Def.'s SMF ¶ 2.) As a result, Defendant's adjuster Raphael and Associates ("R&A") retained an engineer from Paul Zamrowski Associates, Inc. ("Zamrowski") to inspect Plaintiffs' property. (Id. ¶ 3.) In a report dated December 27, 2012, Zamrowski concluded that "water surge/flooding demolished the house" and that "wind may have caused cosmetic damage that was insignificant relative to the demolition of the house by the flooding." (Id. ¶ 4; Zamrowski Report, attached to Def.'s Br. as Ex. E.)

On February 25, 2013, R&A, on behalf of Defendant, sent a letter to Plaintiffs regarding Plaintiffs' claim for damages to their property. The second paragraph reads:

> We are pleased to inform you damages resulting from wind are covered under your Property Insurance Policy. Our inspection revealed damages to your property. We enclose our estimate of repair which totals $. After the recoverable depreciation in the amount of $ and your wind deductible of $ has been applied this renders a net claim of $. Under separate cover a check of $ will be forwarded to the policy address. If you have any questions in this matter, please feel free to contact the undersigned.

(Letter from R&A to Plaintiffs, Attached to Def.'s Br. as Ex. F ("February 25 Letter").) However, the letter continued, saying, "the claim submitted for flooding, which caused water damage to the risk premises is expressly excluded in this policy. We regret to inform you this

policy, in this instance, will not respond to indemnify you for your damages." Id.  The letter concluded that Defendant "reserve[d the] right[] to amend, alter or supplement this letter should information become known in the future that would affect the content of this letter." Id.

Plaintiffs did not respond to the February 25 letter but filed a Complaint in the Superior Court of New Jersey, Law Division, on August 21, 2014, nearly 19 months after the February 25 Letter.  (Def.'s SMF ¶ 7.)   Plaintiffs' Complaint asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing due to Defendant's alleged failure to cover damage to Plaintiffs' property that was caused by wind.  (See generally Compl. Counts I and II.) Defendant filed the present Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 on August 21, 2014, arguing that the action is barred by the applicable statute of limitations.

## II.   LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. Id. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

New Jersey has a six-year statute of limitations for contractual actions. N.J. Stat. § 2a:14-1. That six-year statute of limitations ordinarily applies to insurance actions. Breen v. New Jersey Mfrs. Indem. Ins. Co., 105 N.J. Super. 302, 309 (Ch. Div. 1969), aff'd, 109 N.J. Super. 473 (App. Div. 1970). However, the statute of limitations may be shortened by the terms of an insurance contract. Gahney v. State Farm Ins. Co., 56 F. Supp. 2d 491, 495 (D.N.J. 1999) (citing James v. Fed. Ins. Co., 5 N.J. 21, 24 (1950)). Both parties to the instant claim agree that the contractual one-year statute of limitations found in Plaintiffs' insurance policy is binding.

At issue in the instant claim is whether the operation of the "equitable tolling doctrine" allows Plaintiffs to bring this suit more than one year after the accrual date of their property loss. Specifically, in response to Defendant's Motion for Summary Judgment, Plaintiffs contend that Defendant is estopped from raising a statute of limitations defense because the February 25 letter was insufficient to end the tolling of that statute of limitations.[2]

---

[2] Plaintiffs also allege that Defendant is estopped from raising a statute of limitations defense because it failed to issue payment for damage that it agreed was covered under the policy. However, the Court need not address this issue since it determines that the February 25 letter was insufficient to end the tolling period and will deny Defendant's motion for summary judgment on those grounds.

4

In this context, the New Jersey Supreme Court has determined that contractual limitation provisions should not run uninterrupted from the date of loss, as it would allow the statute of limitations to run while the insurance company investigated the loss. Peloso v. Hartford Ins. Co., 56 N.J. 514, 521 (1970). In Peloso Court held that:

> the fair resolution . . . is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined. In this manner, the literal language of the limitation is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will only have 12 months to institute suit.

Id. Thus, the one-year statute of limitations is tolled from the time the insured gives notice of loss until the time that the insurance company "formally denies coverage." Id.

To determine whether the one-year statute of limitations bars Plaintiffs' claim, the Court must determine whether the February 25 letter was, on its face, an unambiguous formal denial so as to resume the running of the statute of limitations.

In arguing that the February 25 letter was ambiguous, and therefore not a clear and unequivocal denial, Plaintiff relies primarily on Azze v. Hanover Ins. Co., 336 N.J. Super. 630 (App. Div. 2001), cert. denied, 168 N.J. 292 (2001). In Azze, the plaintiffs filed an insurance claim with their homeowner's insurance carrier, Hanover Insurance Company ("Hanover") in August of 1995 after a waterbed burst and caused significant damage to their property. Id. at 635. In September of 1995, Hanover sent the Azze's a letter, stating that Handover was unable to cover damage stemming from the burst waterbed. Id. at 634.

More than two-years later, on October 23, 1997, the Azze's filed a complaint seeking enforcement of their insurance coverage under their homeowner's insurance policy. Id. at 635. Hanover filed a motion for summary judgment asserting that the statute of limitations barred the

5

Azze's claim. Id. The motions judge found that the 1995 letter constituted a clear and unequivocal denial of the Azze's claim and granted Hanover's motion. Id. On appeal, the Azze's argued that their claim was not time barred under equitable tolling principles because Hanover's letter was not a clear and unequivocal denial. Id. at 637.

The Superior Court of New Jersey, Appellate Division agreed with the Azze's and found that the letter was ambiguous. Id. at 641. Notably, the court found the denial letter was not "sufficiently unequivocal because of the special circumstances that surrounded the claim." Id.[3] At the time the denial letter was sent, the Azze's were negotiating with Hanover on the issue of coverage for their structural damage claim arising from the same waterbed incident. Id. at 642-43. These negotiations went well into 1996. Id. at 643. The court determined that because the two claims "stemmed from the same policy, and because the negotiations regarding a section of that claim were ongoing well after the September 1995 denial letter, a reasonable insured might well believe that the limitations period would not restart until after the structural damage claim was settled." Id. The court concluded that the September 1995 letter was not an unequivocal denial and, therefore, the statute of limitations continued to be tolled from August 1995 through January 1997. Id. Thus, the action was timely filed under equitable tolling principles. Id.; see also Inacio v. State Farm Fire & Cas. Co., Civ. No. 14-4953, 2015 WL 457049, at *6-7 (D.N.J. Feb. 3, 2015) (holding that the defendant's letter was not an unequivocal notice of denial because "special circumstances," a lack of "denial language," and a statement in the letter that invited the plaintiff to supply new information was ambiguous).

---

[3] The court in Azze also found that the letter was ambiguous because it "refer[ed] to the submission of new information." 336 N.J. Super. at 641. "One might reasonably wonder why Hanover would require more information, if coverage has already been unequivocally denied . . . [a] very rational conclusion would be that the denial is not, in fact, final, but instead represents a preliminary finding that remains open to revision." Id. at 641-42. Additionally, the court determined that the suggestion to contact the Department of Insurance "could reasonably lead a person to conclude that contact with DOI was actually a prerequisite to a lawsuit." Id. at 642.

Turning to Plaintiffs' claim, the Court finds that Azze is analogous. First, this claim apparently involves "special circumstances," suggesting that Defendant's February 25 letter was ambiguous. See Azze, 336 N.J. Super. at 642-43. Plaintiffs filed a claim with Defendants for "storm damages" caused by Superstorm Sandy, not a specific claim for flood damages which was not covered by their policy. (Liguori Claim, Nov. 1, 2012, attached to Def.'s Br. as Ex. C.) While the February 25 letter expressly denied claims for flood damage, it also told Plaintiffs that it was "pleased to inform [them] damages resulting from wind" were covered under the policy. This would entirely consistent with Plaintiffs' Policy, which covered wind damage. Dollar amounts of the estimates of the total damages Plaintiffs would receive were left blank but the letter did state that Defendant's inspection revealed wind damage to Plaintiffs' property. Based on a reasonable reading of the language, it would appear that Plaintiffs were to receive some money for the wind damage to their property.[4] From Defendant's perspective, this paragraph is at best ambiguous and is at worst an agreement to pay Plaintiffs' wind damage claim. In other words, the Court cannot find that there was unequivocal "denial language" in the February 25 letter with regard to any wind damage covered under Plaintiff's policy.

Secondly, the February 25 letter stated that Defendant reserved the right to amend or supplement the letter "should information become known in the future that would affect the content of this letter." This language is similar to that in the Azze letter, which the court found could be read ambiguously, since one might reasonably wonder why new information could become relevant in the future if the denial was final at the time. While such a statement on its own is not enough to render the letter ambiguous, it lends further support to Plaintiffs' position

---

[4] At the very least, the paragraph may have been boilerplate language that R&A failed to remove from the February 25 letter. Either way, it renders any denial of coverage in the remainder of the letter ambiguous as to a denial of coverage for wind damage.

7

that the letter was ambiguous. Cf. Zaun v. Franklin Ins. Co., No. L-1000-12, 2013 WL 1104777, at *2-3 (N.J. Super. App. Div. March 19, 2013) (affirming the trial court's grant of summary judgment where a denial letter included an express denial and clearly set out the one-year statute of limitations provision, but also invited newly available information).

Defendant's argument that Azze is inapplicable because Plaintiffs have not submitted affidavits with respect to this motion indicating they were misled by the February 25 letter, and that equitable estoppel does not apply here because Plaintiffs have not provided evidence of detrimental reliance, is inapposite. The Azze court itself did not require the plaintiffs to make such a showing and Defendant cites to nothing that suggests Plaintiffs here are required to do as much in order to survive summary judgment. Instead, it is for the Court to decide whether the language in the February 25 letter was clear, and if so it should interpret the meaning of that language. See Zaun, 2013 WL 1104777, at *3 (noting that where "the language of the letter was the only 'fact' necessary for the trial court to reach its conclusion … [i]nterpretation of the language is a purely legal question appropriate for summary judgment.") (citing Spaulding Composites Co. v. Liberty Mut. Ins. Co., 346 N.J. Super. 167, 173 (App. Div. 2001) rev'd on other grounds sub nom., Spaulding Composites Co. v. Aetna Cas. & Sur. Co., 176 N.J. 25 (2003)). Where, however, the parties dispute the meaning of the language and ambiguity in the language subjects it to more than one reasonable interpretation, summary judgment is not appropriate. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418-19 (3d Cir. 2013). Here the Court finds that the language is at the very least ambiguous, and that it would be reasonable for an insured, upon receiving a letter that stated that the insurer was "pleased" to inform them that wind damage would be covered, to expect the insurer to subsequently cover the damage to the insureds' property caused by wind.

Based on the lack of a clear denial of Plaintiffs' claim with respect to wind damage, the language in the letter that Defendant was "pleased" to inform Plaintiff that wind damage would be covered, and Defendant's open-ended statement that the letter could be amended should new information become available, the Court finds that the February 25 letter was not an unambiguous denial of Plaintiffs' insurance claim.  Therefore, the Court cannot conclude that Plaintiffs' claims are clearly barred by the statute of limitations, and Defendant's Motion for Summary Judgment must be denied.

### IV.  CONCLUSION

For the reasons expressed above, Defendants' Motion for Summary Judgment will be **DENIED**.  An accompanying Order shall enter.


Dated:  7/17/2015                                                                       s/ Robert B. Kugler
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge